## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNIFER WALSTRUM**<br>2673 Kissel Hill Road<br>Lititz, PA 17543<br><br>*Plaintiff,*<br><br>**vs.**<br><br>**WAL-MART STORES EAST, LP**<br>c/o The Corporation Trust Company,<br>     Registered Agent<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>*Defendant.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through undersigned counsel, hereby files the following Complaint against Defendant:

### INTRODUCTION

1.     Plaintiff brings the instant action to seek redress for unlawful discrimination in violation of federal and state law.

### PARTIES

2.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

3.      Plaintiff is an adult individual residing at the above address.

4.      Defendant Wal-Mart Stores East L.P., is a corporation created and existing pursuant to the laws of the State of Delaware with a registered agent for service of process at the above address.

5.      At all times relevant herein, Defendant acted or failed to act through its agents, servants and employees, each of whom was in the scope of their employment at all times relevant herein.

6.      Defendant is an "employer" within the meaning of the ADA because it is engaged in an industry affecting interstate commerce and because they maintained or maintains fifteen ("15") or more employees for each working day in each of twenty ("20") or more weeks in the current or preceding calendar year.

7.      Defendant is an "employer" within the meaning of the Family Medical and Leave Act ("FMLA") as it engages in commerce, or in any industry or activity affecting commerce, and has fifty ("50") or more employees for each working day in each of twenty ("20") or more weeks in the current or preceding calendar year.

8.      Defendant also maintains sufficient employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

## JURISDICTION and VENUE

9.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

10.     The Court may properly maintain personal jurisdiction over the Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over the Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

11.     The United States District Court for the Middle District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

12.     The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

13.     Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Defendant is located in and conducts

business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PROCEDURAL and ADMINISTRATIVE REMEDIES

14.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15.    Plaintiff has satisfied the procedural and administrative requirements for proceeding was follows:

a)  On or about July 6, 2017, Plaintiff filed a timely written charge of discrimination by facsimile against Defendant (No. 530-2017-03178C) with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission alleging discrimination and retaliation.

b)  The Equal Employment Opportunity Commission mailed a Notice of Right to Sue on the foregoing charge on or about January 18, 2018;

c)  The instant action is timely because it is initiated within ninety (90) days of the receipt of the aforementioned Notice;

16.    Plaintiff has exhausted federal administrative remedies as to the allegations of this Complaint.

17.    Plaintiff will seek leave to amend the instant complaint to incorporate a claim under the Pennsylvania Human Relations Act ("PHRA") at the end of the one-year statutory waiting period.

## FACTUAL BACKGROUND

18.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

19.   Plaintiff began her employment with Defendant on or about September 6, 2016 and at that time made her managers aware that she was on methadone as a prescription and as part of her rehabilitation.

20.   No one expressed any problem or difficulty with Plaintiff's prescription at that time.

21.   On or about October 6, 2016, Plaintiff was at her assigned register for the day and while she was cleaning up around the register, she bent down to grab the paper towels underneath the register.

22.   Plaintiff felt a sharp prick on the top of her hand and pulled her hand out quickly.

23.   Plaintiff cannot see anything there but instantly, her hand started to swell and there were two white little circles where she was bitten.

24.   Plaintiff's hand started with a huge severe red rash and severe itching that followed.

25.   Plaintiff immediately notified her manager Holly who was working that day.

26.   Plaintiff told her that something had bitten her under the register and she looked at her hand and took her to the office to file an employee incident report.

27.     Afterwards, Holly was told to take Plaintiff to the doctor that is assigned for Walmart associate incidents.

28.     This was called "work camp".

29.     This was qualified intermittent FMLA leave even if Plaintiff did not explicitly request it.

30.     At the doctor's office they checked Plaintiff in, took her back and asked for a urine sample for the required drug screen.

31.     Plaintiff informed the nurse that she was prescribed methadone and she said that was fine.

32.     The nurse said she would just need to get papers stating that Plaintiff was prescribed methadone.

33.     After her drug screen the doctor saw Plaintiff and declared that she had been bitten by an insect (non-venomous) and he prescribed Plaintiff an antibiotic and a cream to help with the swelling and itching/burning pain.

34.     Plaintiff's hand was wrapped up and she was told to take the rest of the day off and go home and ice her hand.

35.     Plaintiff returned to the lobby and scheduled a follow up appointment for October 12, 2016.

36.     Once Plaintiff returned to the store, Holly informed her that she would be paid for the rest of her shift that day and to go home and rest.

37.     On or about October 12, 2016, Plaintiff's follow up appointment was in the morning and she went alone to see the doctor.

38.     The doctor checked her hand and gave her a bag with some more supplies.

39.     The doctor's office said Plaintiff's wound was healing well and she should be able to return to work.

40.     Plaintiff got the papers for her methadone prescription that she needed to submit and faxed the papers into work.

41.     During this time, up until when Plaintiff was terminated, Plaintiff never received any phone calls nor did any managers come up to her during work to tell her that they did not receive the paperwork for her methadone prescription.

42.     Plaintiff gave specific instructions to notify her on my cell phone due to the fact she was working in York, PA and living in Lancaster, PA.

43.     During her work schedule, Plaintiff stayed at her mother's house and when she had a few days off in a row she would go home.

44.     On or about October 21, 2016, Plaintiff worked until an hour before her shift was supposed to end.

45.     Another associate came to her and told her that they were covering for her and that Plaintiff was needed in the office.

46.     So, Plaintiff finished with her customer and signed out and reported to the office.

47.     Holly and Linda, the two managers, informed Plaintiff that she was being terminated and they demanded her badge and vest.

48.     When Plaintiff asked why, they said that Plainiff had violated company policy for failing a drug test relative to methadone in her system.

49.     Plaintiff told them she had a prescription and that she faxed the paperwork in the Defendant.

50.     Holly and Linda proceeded to tell Plaintiff that they did not receive it or that it was lost.

51.     Plaintiff was nevertheless terminated.

52.     Plaintiff asked if she could run to her mother's house very quickly and get the paperwork after her shift was over.

53.     Holly and Linda said no.

54.     The next day, on or about October 22, 2016, Plaintiff called Defendant first thing in the morning to talk to the store manager.

55.     The person on the other end of the phone said they would have him paged and had Plaintiff on hold.

56.     After a brief time, they got back on the phone and said that they did not know where he was even though he was there that day.

57.     Plaintiff left a message for the store manager to call her at his earliest convenience to talk about her termination.

58.     Plaintiff called again every day for the next two weeks asking to speak with the store manager and every time there was always an excuse of why he could take Plaintiff's call.

59.     Thereafter, Plaintiff proceeded to look for a new job.

60.     Defendant discriminated Plaintiff on the basis of a disability and/or perceived disability.

61.     Defendant retaliated against Plaintiff for using what would have been FMLA qualified leave and for informing the company that she took prescription medication.

## COUNT I
## ADA Discrimination

62.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

63.     Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limited/limits one or more major life activities, or because Plaintiff had a record of such impairment.

64.     Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA because Plaintiff was regarded as and/or perceived by Defendant and its agents as having a physical impairment that substantially limited/limits one or more major life activities.

65.     The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of disability or perceived disability.

66.     The foregoing conduct by Defendant constitutes unlawful retaliation against Plaintiff on the basis of engagement in protected activity.

67.     As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

## COUNT II
## FMLA Violations

68.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

69.     It is believed and therefore averred Plaintiff was an "eligible employee" within the meaning of the FMLA because he was:

      a.  employed by Defendant for a period of at least twelve (12) months; and

      b.  worked at least 1,250 hours in the twelve-month period immediately preceding the scheduled commencement of his FMLA leave.

70.     Plaintiff was entitled to FMLA leave.

71.     At all times relevant hereto, the Defendant was prohibited by law from interfering with, restraining, or denying the exercise of or attempt to exercise Plaintiff's FMLA rights.

72.   At all times relevant hereto, the Defendant was prohibited by law from discharging or in any other manner discriminating against Plaintiff for opposing any practice made unlawful.

73.   At all times relevant hereto, the Defendant was prohibited by law from retaliating against Plaintiff for utilizing FMLA qualified leave.

74.   As a result of each Defendant's violations of the FMLA, Plaintiff has suffered damages, as set forth herein.

75.   As a result of each Defendant's retaliation against Plaintiff for use of the FMLA qualified leave, Plaintiff has suffered damages, as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in Plaintiff's favor and against the Defendant and that it enter an Order as follows:

a.  The Defendant is to be permanently enjoined from engaging in discrimination against Plaintiff on any other basis prohibited under applicable law;

b.  The Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and is to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

11

c. The Defendant is to be prohibited from continuing to maintain its unlawful policy, practice, or custom of discriminating against employees and is to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d. The Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for the Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date Plaintiff first suffered discrimination at the hands of the Defendant or its agents until the date of verdict;

e. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by the Defendant's actions to the extent they are available as a matter of law.

f. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

g.  Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h.  Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

i.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

j.  Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action; and

k.  The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l.  Plaintiff demands trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38(b)(1).

Respectfully submitted,

**KOLMAN ELY, P.C.**

/s/ W. Charles Sipio
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated: April 13, 2018